1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF KANSAS
2

3  UNITED STATES OF AMERICA,

4    Plaintiff,                        Case No. 19-40021-01

5    v.

6  MGP INGREDIENTS, INC. (01),         Topeka, Kansas
                                       Date:  11/18/2019
7    Defendant.

8  ........................

9
                 TRANSCRIPT OF CHANGE OF PLEA HEARING
10           BEFORE THE HONORABLE DANIEL D. CRABTREE
                 UNITED STATES DISTRICT COURT JUDGE
11

12  APPEARANCES:

13  For the            Richard L. Hathaway
    Plaintiff:         United States Attorney's Office
14                     444 SE Quincy
                       Suite 290
15                     Topeka, KS 66683

16
    For the            Mark A. Thornhill
17  Defendant:         Andrew Brought
                       Spencer Fane, LLP
18                     1000 Walnut
                       Suite 1400
19                     Kansas City, MO 64106

20

21

22

23

24    Proceedings recorded by machine shorthand, transcript
    produced by computer-aided transcription.
25

14:46:43
14:46:43

 1      (Court called to order.)

14:46:44  2      THE COURT:  I'll go ahead and call the case, and it is

14:46:50  3   No. 19-40021, specifically for Defendant No. 1 in the case,

14:46:56  4   captioned the *United States of America against MGP Ingredients,*

14:47:04  5   *Inc.*  Let me begin with the appearances of the parties and

14:47:06  6   counsel.

14:47:08  7      MR. HATHAWAY:  Good afternoon, Your Honor, Rich

14:47:11  8   Hathaway appears for the United States of America.

14:47:12  9      THE COURT:  Good afternoon, Mr. Hathaway.

14:47:15 10      For the defendant MGP Ingredients.

14:47:19 11      MR. THORNHILL:  Good afternoon, Your Honor, Mark

14:47:21 12   Thornhill and Andrew Brought and the represent -- through

14:47:26 13   representative Thomas J. Lynn.  He serves as the company's

14:47:31 14   counsel.

14:47:31 15      THE COURT:  Mr. Thornhill, Mr. Brought, Mr. Lynn, good

14:47:36 16   afternoon.

14:47:37 17      This is noticed on the docket -- be seated or not if

14:47:41 18   you prefer.  It's up to you entirely.

14:47:43 19      This is noticed on the docket as a change of plea

14:47:45 20   hearing in the case.  And my understanding, Mr. Thornhill, is

14:47:52 21   that MGP Ingredients wishes to change its plea to Count 1 of a

14:47:57 22   superseding -- of these superseding indictment; is that

14:48:00 23   correct?

14:48:00 24      MR. THORNHILL:  That's not correct, Your Honor.  It's

14:48:01 25   Count 3 to the superseding indictment.

14:48:05   1          THE COURT:  I'm so sorry.

14:48:06   2          MR. THORNHILL:  That's okay.  That is a misdemeanor

14:48:10   3   plea of negligent release and endangerment.

14:48:18   4          THE COURT:  I apologize to you.  I think I wrote

14:48:19   5   down -- I see quite clearly the plea agreement says three and I

14:48:23   6   have write down one sort of habitually, so I apologize for

14:48:27   7   that.

14:48:27   8          MR. THORNHILL:  Sure.  And, Your Honor, there is a

14:48:29   9   plea agreement in this case.  The final version was transmitted

14:48:35  10   to your clerk, Ms. Garrett, this morning.  I have in my hand

14:48:41  11   the final document as signed by the representative of the

14:48:46  12   defendant, the lawyers in this case and all representatives of

14:48:51  13   the United States Attorney's Office.

14:48:52  14          THE COURT:  Okay.  I think I have the most recent

14:48:55  15   generation of the plea agreement.  Ms. Garrett provided me one

14:49:02  16   after court this morning and also the helpful blue line copy.

14:49:06  17   So I have -- I think I'm up to date with that.

14:49:09  18          MR. THORNHILL:  That is the same document that has

14:49:11  19   been executed by the parties.

14:49:12  20          THE COURT:  All right.  So tell me, is Mr. Lynn going

14:49:18  21   to serve in the role of the person who asks my -- answers my

14:49:22  22   many questions?

14:49:23  23          MR. THORNHILL:  He is, Your Honor.

14:49:24  24          THE COURT:  Well, then can I ask the two of you to

14:49:26  25   come to the lectern so that we may proceed with that.

19-4002101   USA v MGP Ingredients, Inc.   11.18.19                    4

| 14:49:37 | 1 | MR. THORNHILL: And, Your Honor, before you swear |

14:49:37  1        MR. THORNHILL:  And, Your Honor, before you swear

14:49:40  2   Mr. Lynn and ask him his questions, there would be -- there are

14:49:43  3   a couple of features that I want to make sure the court is

14:49:46  4   aware of --

14:49:46  5        THE COURT:  All right.

14:49:47  6        MR. THORNHILL:  -- related to this plea agreement.

14:49:49  7        Your Honor, there -- the parties have agreed to a fine

14:49:56  8   amount under the Alternative Fines Act that is set out in the

14:50:04  9   plea agreement.  There is no order of restitution in this plea

14:50:10  10  agreement, and the parties anticipate that there would be no

14:50:12  11  order of restitution.  A footnote in the plea agreement

14:50:16  12  explains that MGPI, Midwest -- MGP Ingredients, Inc., made

14:50:24  13  payments to medical providers and to other persons who claimed

14:50:28  14  property damage.  The United States has not identified any

14:50:33  15  crime victims to the defendant.  And then also, Your Honor,

14:50:38  16  paragraph 13 of the plea agreement provides that neither party

14:50:43  17  seeks a presentence investigation.

14:50:50  18        THE COURT:  And tell me about -- can I do that?

14:50:54  19        MR. THORNHILL:  Can you not have a presentence

14:50:56  20  investigation?

14:50:56  21        THE COURT:  I've never done it, so it's a real

14:50:59  22  question.

14:50:59  23        MR. THORNHILL:  Your Honor, I think I believe that you

14:51:02  24  can waive -- or you can not order that.  I've had other cases

14:51:04  25  in the past, not with Your Honor but with other judges, where

14:51:09   1   the court did not order a presentence investigation report

14:51:17   2   pursuant to the party's request really or agreement that one

14:51:21   3   was not necessary.

14:51:24   4           MR. HATHAWAY:  Judge, I have also been in that

14:51:26   5   situation where we have waived the presentence investigation

14:51:29   6   report.

14:51:30   7           MR. THORNHILL:  Your Honor, this -- to me the reason

14:51:32   8   that is sensible is because this is an 11(c)(1)(C) plea.  But I

14:51:45   9   would also say, Your Honor, that is entirely up to the court.

14:51:48   10  It is not something that the -- that -- the parties -- the

14:51:53   11  parties control the terms of the agreement and the court either

14:51:59   12  accepts the parties -- the terms of the agreement made by the

14:52:01   13  parties or not.  But certainly the court has the power and the

14:52:06   14  right to inform itself as to whether or not it wants to accept

14:52:12   15  those stipulated terms by ordering and reviewing a presentence

14:52:20   16  investigation report.

14:52:21   17          THE COURT:  Yeah.  And so let me just hear some of the

14:52:24   18  reasoning.  I mean, I know -- I know all the lawyers in this

14:52:27   19  case and I know that -- enough about it and them to know that

14:52:32   20  this was not a random outcome.

14:52:35   21          MR. THORNHILL:  Correct.

14:52:36   22          THE COURT:  So what's the rationale for foregoing a

14:52:42   23  PSI and PSR?

14:52:44   24          MR. THORNHILL:  Your Honor, essentially about time and

14:52:46   25  expense.  A PS -- a presentence investigation report will

14:52:52  1    require some time.  It -- certainly the parties are going to

14:52:57  2    comment on what is received.  I mean, I just think you have to

14:53:03  3    expect that.  So there is time and there is expense associated

14:53:06  4    with it.  The parties are ready to proceed to sentencing at the

14:53:11  5    earliest practicable time, and so this -- a presentence

14:53:18  6    investigation report could add to that time.  And it does add,

14:53:22  7    although I acknowledge, Your Honor, in a marginal way, to the

14:53:25  8    expense of the case.  If I may just conclude then --

14:53:35  9              THE COURT:  Sure.

14:53:36  10             MR. THORNHILL:  -- by saying the plea agreement

14:53:41  11   contains a factual basis that I believe sets out all of the

14:53:46  12   events that resulted in this negligence event, and so I don't

14:53:59  13   believe that a presentence investigation report would add any

14:54:07  14   information that the court would consider to be relevant in

14:54:11  15   deciding whether or not to agree to the parties' stipulated

14:54:16  16   penalty.

14:54:17  17             THE COURT:  Mr. Hathaway, anything you want to add to

14:54:19  18   that rationale?

14:54:20  19             MR. HATHAWAY:  Judge, I agree with it completely.  The

14:54:26  20   presentence investigation report are directly related

14:54:29  21   ordinarily to the background of an individual and their

14:54:35  22   history, what got them to court that particular day.  And I

14:54:38  23   think if you were to order a PSIR in this particular case, the

14:54:49  24   USPO would look at you and go, wow, where do we start.

14:54:55  25             THE COURT:  Well, there's nothing -- there's nothing

19-4002101  USA v MGP Ingredients, Inc.  11.18.19                    7

14:54:58  1    garden variety about this case, I think that much we all agree.

14:55:03  2         You may sense this, you're astute people, I hesitate a

14:55:08  3    little bit to make that decision now because an important

14:55:16  4    component of my thought process about whether to accept an

14:55:20  5    11(c)(1)(C) agreement is how it comports or doesn't comport,

14:55:27  6    for good reason in some cases, with the Sentencing Guidelines.

14:55:32  7    And it may be that even the fullest and fairest presentence

14:55:41  8    investigation and history wouldn't inform that analysis because

14:55:44  9    of the complex nature of the allegations of wrongdoing here.

14:55:49  10        Let me just ask this question, then I'll -- then I'll

14:55:52  11   move on to other things:  Is in any way MGP's decision to plead

14:55:58  12   guilty under this plea agreement dependent upon the court

14:56:03  13   agreeing with the parties on the presentence report and

14:56:07  14   foregoing it?

14:56:08  15        MR. THORNHILL:  No.

14:56:09  16        THE COURT:  Okay.

14:56:09  17        MR. THORNHILL:  It is not dependent upon the court's

14:56:11  18   decision whether or not to order a presentence investigation

14:56:14  19   report.  The plea agreement merely states that neither party

14:56:18  20   requests one.

14:56:19  21        THE COURT:  I don't want to make -- given what I've

14:56:22  22   already telegraphed to you that this is the first of the kind

14:56:25  23   for me, I want to think about it.  I want to consult with a

14:56:29  24   probation officer assigned to the case.  And what I will do is

14:56:33  25   I think I will give you a sentencing date today that assumes a

14:56:40  1    report is going to be done.  And then if I conclude I don't

14:56:43  2    want one, then I can accelerate it.  Because I understand that

14:56:49  3    the parties are at least ready and maybe even eager to get to

14:56:56  4    the sentencing phase if I conclude I don't need a PSR.

14:56:59  5            So I'll give you the regular sentencing date which

14:57:04  6    is -- I'm working on February 24 today.  If I conclude I can

14:57:08  7    live without a PSR and discharge the sentencing obligations

14:57:14  8    that Congress has imposed on district judges, then I'll change

14:57:18  9    that date and we'll be in touch with you about accelerating the

14:57:22  10   time.

14:57:23  11           MR. THORNHILL:  Thank you, Your Honor.

14:57:24  12           THE COURT:  All right.  Thank you very much.

14:57:25  13           So, Mr. Lynn, can I ask you to raise your right hand

14:57:27  14   to accept the oath from the deputy clerk.

14:57:51  15       (Thomas Lynn sworn.)

14:57:56  16           THE COURT:  Sir, can you please say your name for

14:57:58  17   the -- full name for the record.

14:58:00  18           MR. LYNN:  Thomas Lynn.

14:58:03  19           THE COURT:  Mr. Lynn, how old are you, sir?

14:58:06  20           MR. LYNN:  Forty-eight.

14:58:06  21           THE COURT:  All right.  So I tell this to every

14:58:13  22   defendant in every change of plea hearing, I'm now going to

14:58:16  23   tell you some things that you obviously know by virtue of your

14:58:19  24   training and experience.  The oath you just took, it's a real

14:58:24  25   oath.  It imposes on you a legal obligation to answer the

14:58:28  1  questions I'm going to ask over the next 30 minutes or so

14:58:32  2  truthfully.

14:58:34  3         I am supposed to tell you, and so I will, that if you

14:58:37  4  were to violate that oath, for instance give a false answer,

14:58:41  5  then it could give the prosecutor a reason to charge you and

14:58:45  6  perhaps your employer with a new crime such as perjury.  Does

14:58:49  7  all that make sense to you?

14:58:50  8         MR. LYNN:  Yes.

14:58:51  9         THE COURT:  I telegraphed that I have about 30 minutes

14:58:55  10  worth of questions.  And I typically ask so many questions

14:59:01  11  because I want to make sure that the defendant who has

14:59:06  12  announced they wish to plead guilty may not be as sophisticated

14:59:11  13  as you are, may not understand the consequences of pleading

14:59:15  14  guilty to a crime in federal court.  I'm probably going to ask

14:59:20  15  those anyway.  Please don't take offense.  That's the reason

14:59:23  16  for all the questions.

14:59:24  17         I guess a threshold issue that I'd like to take up now

14:59:29  18  is there -- that this is a variation.  Often, usually almost

14:59:35  19  always, when I'm here hearing from a defendant who wants to

14:59:39  20  plead guilty, it's from an individual who wants to plead

14:59:43  21  guilty.  Mr. Lynn is here as a representative asking to plead

14:59:50  22  guilty on behalf of MGP Ingredients, Inc.

14:59:54  23         And so, Mr. Thornhill, in some combination of either

14:59:58  24  proffers or Q&A, I'd like to understand how Mr. Lynn's

15:00:08  25  authority to plead guilty on behalf of the corporate defendant

| | | |
|---|---|---|
| 15:00:12 | 1 | was established. |
| 15:00:14 | 2 | MR. THORNHILL:  And so, Your Honor, may I then address |
| 15:00:16 | 3 | the witness and elicit that information? |
| 15:00:19 | 4 | THE COURT:  You may. |
| 15:00:20 | 5 | MR. THORNHILL:  Thank you. |
| 15:00:20 | 6 | Mr. Lynn, what's your title with MGP Ingredients, |
| 15:00:23 | 7 | Incorporated? |
| 15:00:24 | 8 | MR. LYNN:  Vice president, general counsel and |
| 15:00:26 | 9 | corporate secretary. |
| 15:00:20 | 10 | MR. THORNHILL:  And how long have you been in that |
| 15:00:28 | 11 | position? |
| 15:00:28 | 12 | MR. LYNN:  Since August of 2017. |
| 15:00:30 | 13 | MR. THORNHILL:  Are there other officers within the |
| 15:00:32 | 14 | corporation to whom you report? |
| 15:00:34 | 15 | MR. LYNN:  Yes. |
| 15:00:20 | 16 | MR. THORNHILL:  Who are those persons? |
| 15:00:36 | 17 | MR. LYNN:  Chief executive officer. |
| 15:00:38 | 18 | MR. THORNHILL:  What is the name of the chief |
| 15:00:39 | 19 | executive officer? |
| 15:00:40 | 20 | MR. LYNN:  Gus Griffin. |
| 15:00:41 | 21 | MR. THORNHILL:  Gus Griffin? |
| 15:00:42 | 22 | MR. LYNN:  Yes. |
| 15:00:43 | 23 | MR. HATHAWAY:  Mark, could you ask him to slow down. |
| 15:00:46 | 24 | MR. THORNHILL:  Sure. |
| 15:00:48 | 25 | Have you discussed the plea agreement with |

19-4002101   USA v MGP Ingredients, Inc.   11.18.19          11

| | | |
|---|---|---|
| 15:00:52 | 1 | Mr. Griffin? |
| 15:00:52 | 2 | MR. LYNN:  Yes. |
| 15:00:54 | 3 | MR. THORNHILL:  And what did Mr. Griffin say to you in |
| 15:00:56 | 4 | your discussions? |
| 15:00:58 | 5 | MR. LYNN:  He authorized me to enter into this plea |
| 15:01:00 | 6 | agreement. |
| 15:01:00 | 7 | MR. THORNHILL:  Okay.  The plea agreement is contained |
| 15:01:02 | 8 | within a document that you have signed; is that correct? |
| 15:01:07 | 9 | MR. LYNN:  That's correct. |
| 15:01:07 | 10 | MR. THORNHILL:  And have you been able to show that |
| 15:01:09 | 11 | plea agreement, not the one necessarily with your signature, |
| 15:01:11 | 12 | but still its substance with Mr. Griffin? |
| 15:01:16 | 13 | MR. LYNN:  I've shared the substance with Mr. Griffin. |
| 15:01:19 | 14 | MR. THORNHILL:  All right.  Now, Mr. Griffin is the |
| 15:01:21 | 15 | chief executive officer of the company? |
| 15:01:23 | 16 | MR. LYNN:  That's correct. |
| 15:01:24 | 17 | MR. THORNHILL:  The company has a board directors? |
| 15:01:25 | 18 | MR. LYNN:  Yes. |
| 15:00:20 | 19 | MR. THORNHILL:  Do you know of your personal knowledge |
| 15:01:28 | 20 | that the substance of the plea agreement that the company |
| 15:01:30 | 21 | proposes has been shared with members of the board of directors |
| 15:01:32 | 22 | of the company? |
| 15:01:33 | 23 | MR. LYNN:  I outlined the proposed terms to the board |
| 15:01:35 | 24 | of directors and received their authorization to proceed. |
| 15:01:37 | 25 | MR. THORNHILL:  And when you outlined the terms to the |

15:01:41   1    board of directors, did you describe to them, for example, the

15:01:45   2    penalty that MGP Ingredients, Inc. would pay to the United

15:01:50   3    States in the event that the plea is accepted?

15:01:53   4            MR. LYNN:  I did.

15:01:54   5            MR. THORNHILL:  And that penalty is in the amount of

15:01:58   6    $1 million; correct?

15:01:59   7            MR. LYNN:  That's correct.

15:00:20   8            MR. THORNHILL:  And the board of directors was

15:02:00   9    informed of that and agreed to that?

15:02:02   10           MR. LYNN:  That's correct.

15:02:03   11           MR. THORNHILL:  And that penalty, the plea agreement

15:02:05   12   states, to be paid at or before the time of sentencing.  And

15:02:09   13   did the board -- was the board of directors informed of that

15:02:14   14   and did the board of directors agree to that?

15:02:17   15           MR. LYNN:  The board of directors wasn't informed of

15:02:19   16   that particular term.

15:02:21   17           MR. THORNHILL:  Is it within your power to ensure the

15:02:23   18   penalty would be paid at or before the time of sentencing?

15:02:26   19           MR. LYNN:  It is.

15:02:26   20           MR. THORNHILL:  Now, the plea agreement that has been

15:02:28   21   discussed is one that's made pursuant to Federal Rule of

15:02:31   22   Criminal Procedure 11(c)(1)(C).  Are you aware of that?

15:00:20   23           MR. LYNN:  Yes.

15:00:20   24           MR. THORNHILL:  And do you understand that that

15:02:40   25   provision of the Rules of Criminal Procedure essentially

15:02:43  1   provides as follows:  The parties to the case, that is to say

15:02:48  2   the United States and in this case MGP Ingredients, can agree

15:02:54  3   among themselves as to the material terms, and all the terms,

15:02:58  4   of a plea agreement and then present that plea agreement to the

15:03:04  5   court.  Thereafter, the court has the power -- has the right

15:03:07  6   and the power to examine the plea agreement and decide whether

15:03:10  7   it wants to accept those terms.

15:03:14  8        If the court agrees to accept those terms as

15:03:19  9   stipulated to by the parties, then the -- the sentence would be

15:03:25 10   imposed pursuant to those terms.  But if the court decided not

15:03:30 11   to agree to the plea agreement, including its stipulated terms,

15:03:35 12   then the court would so advise you and the United States,

15:03:41 13   advise the defendant and the United States, and the defendant

15:03:43 14   then would be free to withdraw its plea of guilty and proceed

15:03:47 15   to trial if that is what the defendant decided it wanted to do.

15:03:52 16        Is that something that you yourself have understood

15:03:55 17   about the provisions of Rule 11(c)(1)(C)?

15:00:20 18        MR. LYNN:  Yes.

15:00:20 19        MR. THORNHILL:  And has that been explained to the

15:04:02 20   chief executive officer and the board of directors?

15:04:05 21        MR. LYNN:  To the chief executive officer but not to

15:04:10 22   the board of directors.

15:04:10 23        MR. THORNHILL:  But the board of directors understood

15:04:16 24   then -- board of directors' understanding was then it would be

15:04:17 25   pleading guilty to a misdemeanor violation in -- identified as

19-4002101   USA v MGP Ingredients, Inc.   11.18.19          14

15:04:21  1   a negligent release with endangerment and that it would pay --

15:04:27  2   that the company would pay a $1 million penalty and -- fine, I

15:04:32  3   should say, pursuant to the plea to that misdemeanor charge?

15:04:37  4          MR. LYNN:  That's correct.

15:04:38  5          MR. THORNHILL:  Your Honor, that concludes my

15:04:40  6   colloquy.

15:04:41  7          THE COURT:  All right.  Thank you very much for

15:04:43  8   addressing that issue.

15:04:46  9          It is my finding based upon the testimony given by

15:04:51  10  Mr. Lynn that this -- that he has the requisite authority to

15:04:58  11  enter a plea of guilty on behalf of the corporate defendant.

15:05:02  12         Let me stop here and talk about one last preliminary

15:05:07  13  and then we'll get to all the questions.  The court, as a

15:05:13  14  matter of both custom and practice, also works with a second

15:05:18  15  document, a petition to enter a plea of guilty.  And so can you

15:05:23  16  tell me if there is such a petition today?

15:05:28  17         MR. THORNHILL:  Your Honor, I have reviewed the form

15:05:31  18  petition.  I did not execute the form petition because it's

15:05:34  19  really applicable to an individual and not to an organization.

15:05:39  20  I prepared one and mostly the blanks were filled in with the

15:05:43  21  letters "not applicable" or "NA."

15:05:47  22         Also the petition's a little bit out of date in

15:05:50  23  connection -- -- let me rephrase that.  It is not applicable to

15:05:57  24  a corporation in terms of the special assessment which is

15:06:00  25  different for an organization from -- than from an individual.

15:06:04  1   Also the special assessment amounts recently have been

15:06:10  2   modified.  They're not substantial, but there is I think a

15:06:13  3   modification since the number that's in the petition.

15:06:16  4        So I do not have the court's preprinted form of

15:06:21  5   petition to present to you today.  I'm happy to go through all

15:06:26  6   of those questions, but I would say to you they are not

15:06:31  7   generally applicable for an organization.

15:06:33  8        THE COURT:  Let's do this:  Why don't we proceed with

15:06:35  9   what we can do.  I'll ask Ms. Garrett to get a copy of the form

15:06:42  10  petition the court uses when we have done almost everything

15:06:47  11  else.

15:06:48  12        MR. THORNHILL:  Okay, sure.

15:06:49  13        THE COURT:  We'll pause, I'll look at it and tell you

15:06:52  14  whether I feel comfortable without a petition.

15:06:54  15        And, Mr. Hathaway, if you have a position on it, I'll

15:06:58  16  hear from you then.

15:06:59  17        MR. THORNHILL:  Your Honor, I might just add I

15:07:01  18  reviewed the form of petition and the one that I actually

15:07:04  19  prepared on Saturday.  I believe that every question you ask,

15:07:11  20  just from my own experience, will be within what is printed in

15:07:15  21  the form petition.

15:07:16  22        THE COURT:  I think you're saying you've had to sit

15:07:18  23  through several guilty pleas while this case has been pending

15:07:21  24  and you kind of know the routine by heart.

15:07:23  25        MR. THORNHILL:  I'm aware of the routine of all

19-4002101  USA v MGP Ingredients, Inc.  11.18.19                16

15:07:26  1   federal judges in this vicinity and also the contents of the

15:07:28  2   form petition.

15:07:29  3           THE COURT:  Okay.  All right.

15:07:31  4           So, Mr. Lynn, back to you.  Tell me just about your --

15:07:35  5   the last or highest level of education you've completed.

15:07:39  6           MR. LYNN:  I have a law degree.

15:07:40  7           THE COURT:  And where did you earn that degree and

15:07:42  8   when?

15:07:43  9           MR. LYNN:  At the University of Chicago in 1999.

15:07:47  10          THE COURT:  1999?

15:07:48  11          MR. LYNN:  Yes.

15:07:49  12          THE COURT:  Thank you.  Mr. Lynn, MGP Ingredients was

15:08:00  13  charged in this case for the first time with a superseding

15:08:02  14  indictment.  Did you get a copy of that superseding indictment?

15:08:06  15          MR. LYNN:  Yes.

15:08:07  16          THE COURT:  And did you, I take, read that superseding

15:08:10  17  indictment carefully?

15:08:11  18          MR. LYNN:  Yes.

15:08:11  19          THE COURT:  Did you also meet with counsel about it?

15:08:14  20          MR. LYNN:  I did.

15:08:14  21          THE COURT:  And go over it carefully?

15:08:16  22          MR. LYNN:  Yes.

15:08:16  23          THE COURT:  Did -- your counsel explained to you the

15:08:22  24  charges that are contained in that superseding indictment?

15:08:24  25          MR. LYNN:  They did.

15:08:25  1          THE COURT:  And did your counsel also explain the

15:08:28  2    evidence the prosecutor says he possesses and would present

15:08:33  3    against your company if you elected to take the case to trial?

15:08:38  4          MR. LYNN:  They did.

15:08:41  5          THE COURT:  With your background I'm not altogether

15:08:43  6    convinced you would need it, but did, nonetheless, you talk

15:08:47  7    with your counsel about the process that a criminal case in the

15:08:52  8    District of Kansas typically follows if you were to elect to

15:08:56  9    take it to trial?

15:08:57  10          MR. LYNN:  I did.

15:08:58  11          THE COURT:  I suspect you know this as well.  You do

15:09:01  12    understand under the Constitution of the United States a

15:09:06  13    corporate defendant also has the right to have a jury decide,

15:09:08  14    after a full jury trial, whether it is guilty or not guilty?

15:09:13  15          MR. LYNN:  I do understand that.

15:09:15  16          THE COURT:  The plea agreement that I -- that has been

15:09:19  17    referenced in the discussions today, my understanding is it is

15:09:23  18    entirely in writing.  Have you read that plea agreement

15:09:26  19    closely?

15:09:26  20          MR. LYNN:  I have.

15:09:27  21          THE COURT:  And, likewise, reviewed it closely with

15:09:29  22    your counsel?

15:09:30  23          MR. LYNN:  I have.

15:09:31  24          THE COURT:  Have you also talked with your counsel to

15:09:34  25    the point where you believe you understand the process that

15:09:39   1   this court normally follows to decide the sentence to be

15:09:44   2   imposed on a party, individual, or corporate party who has been

15:09:50   3   convicted of a crime?

15:09:52   4          MR. LYNN:  I have.

15:09:52   5          THE COURT:  And in terms of the sentencing

15:10:00   6   consequences your company faces if you plead guilty on its

15:10:05   7   behalf today, do you believe you understand those consequences

15:10:08   8   as they are expressed in the binding plea agreement?

15:10:11   9          MR. LYNN:  Yes.

15:10:12   10          THE COURT:  Mr. Lynn, are you fully satisfied with the

15:10:16   11   legal advice that Mr. Thornhill and Mr. Brought and their law

15:10:20   12   firm have provided you in this case?

15:10:22   13          MR. LYNN:  Yes.

15:10:22   14          THE COURT:  And are you fully satisfied with the way

15:10:26   15   that they have represented you in this case?

15:10:28   16          MR. LYNN:  Yes.

15:10:28   17          THE COURT:  The decision to agree to this plea

15:10:34   18   agreement, was that made in a, I guess, sequential process that

15:10:43   19   involved you, your chief executive officer and ultimately the

15:10:47   20   board of directors?

15:10:49   21          MR. LYNN:  It was.

15:10:50   22          THE COURT:  Has anyone ever tried to force you or any

15:10:57   23   other representative of MGP Ingredients to plead guilty to any

15:11:02   24   crime?

15:11:03   25          MR. LYNN:  No.

15:11:04  1          THE COURT:  Has anyone ever threatened you or any

15:11:07  2   other representative of MGP Ingredients if -- with -- with

15:11:15  3   something if they didn't plead guilty?

15:11:16  4          MR. LYNN:  No.

15:11:18  5          THE COURT:  Mr. Lynn, I'm going to ask the prosecutor

15:11:28  6   to give an oral summary of the key provisions in your plea

15:11:34  7   agreement.  I've been provided with an advanced copy of that

15:11:39  8   plea agreement -- actually copies, but I'm going to work from

15:11:42  9   the most recent iteration of that.  I'm going to ask the

15:11:45  10  prosecutor to summarize the key components of your agreement.

15:11:50  11  You've been listening very carefully.  I'm grateful for that.

15:11:53  12  I hope you'll listen to the prosecutor as ably because I'll

15:11:56  13  have a question or two for you about what he says.

15:12:00  14         Mr. Hathaway.

15:12:04  15         MR. HATHAWAY:  Your Honor, paragraph 1 sets forth the

15:12:05  16  maximum penalties that could be applied by the court should

15:12:08  17  this case go to trial.  I won't go through those in detail as

15:12:13  18  they're set forth in the written plea agreement.

15:12:15  19         There's a factual basis for the guilty plea which I

15:12:19  20  will cover when requested to do so at the appropriate time.

15:12:23  21         The key component is found in paragraph 3, which is

15:12:29  22  that the parties propose as an appropriate disposition of the

15:12:32  23  case a fine of $1 million to be paid in full on or before the

15:12:38  24  date of sentencing and the mandatory special assessment of

15:12:44  25  $125.

19-4002101  USA v MGP Ingredients, Inc.  11.18.19                20

15:12:44  1        The parties seek this binding plea agreement as

15:12:48  2   appropriate disposition of the case because, if the court

15:12:53  3   permits itself to be bound by the proposed sentence, it brings

15:12:57  4   certainty to the sentencing process.

15:12:58  5        There's a footnote which counsel has mentioned where

15:13:05  6   the -- there will be no restitution in this case because

15:13:11  7   everything has been paid for pretty much up front by MGP

15:13:17  8   Ingredients, Inc.  They came and they did laudable acts to

15:13:22  9   address the consequences of the negligence.

15:13:24  10       The government agrees in return for the plea not to

15:13:28  11  file any additional charges against defendant or board members

15:13:34  12  or employees, or MGPI Processing, Inc. (sic) or its board

15:13:39  13  members or employees arising out of the facts forming the basis

15:13:44  14  for the present superseding indictment, and we will dismiss

15:13:49  15  Counts 1 and 2 of the superseding indictment as it pertains to

15:13:55  16  MGP Ingredients, Inc. on the date of sentencing.

15:13:58  17       Whether to accept this plea is solely and only a

15:14:13  18  decision that can be made by this district court.  To withdraw

15:14:18  19  the plea would be permitted only if the court does not accept

15:14:21  20  the plea.

15:14:23  21       There is a paragraph 11, a waiver of appeal and

15:14:27  22  collateral attack of the sentence except for the exception

15:14:30  23  that's noted therein.

15:14:31  24       There's waiver of Freedom of Information Act and

15:14:36  25  privacy act waivers.

15:14:37   1        And there are no other parties to the agreement, nor

15:14:43   2   are there any other agreements between the parties except that

15:14:47   3   which is set forth in writing before the court and this written

15:14:51   4   plea agreement.

15:14:54   5        THE COURT:  Thank you, Mr. Hathaway.

15:14:56   6        So, Mr. Lynn, is your understanding of your company's

15:14:58   7   plea agreement with the United States government in this case

15:15:01   8   consistent with everything the prosecutor just said?

15:15:03   9        MR. LYNN:  It is.

15:15:04   10       THE COURT:  I just have a few questions, not as many

15:15:07   11   as normal.  I just want to be sure I am right about a few

15:15:10   12   things.  First of all, in paragraph 1 on page 2, your plea

15:15:18   13   agreement recites that it is pleading guilty to a violation of

15:15:24   14   Section 7413, specifically subsections (c)(4) of Title 42, a

15:15:34   15   crime that is for shorthand referred to as a negligent Clean

15:15:42   16   Air Act violation.  Can I ask you to confirm that you and your

15:15:45   17   company understand that is the federal court crime you are

15:15:49   18   pleading guilty to under your plea agreement?

15:15:52   19       MR. LYNN:  That's correct.

15:15:52   20       THE COURT:  And the next sentence in the plea

15:15:57   21   agreement says that MGP as the defendant admits that it is

15:16:01   22   guilty of that offense.  Is that a correct statement?

15:16:04   23       MR. LYNN:  Yes.

15:16:05   24       THE COURT:  One of the things I want to always be

15:16:07   25   careful with at sentencing is that the defendant understands

15:16:11   1   the maximum penalty the law allows.  Mr. Hathaway referenced

15:16:20   2   the remainder of paragraph 1 as describing that maximum

15:16:23   3   penalty.  I take it you have read that maximum penalty before?

15:16:26   4           MR. LYNN:  I have.

15:16:27   5           THE COURT:  Very well.  So paragraph 9 is the

15:16:41   6   circumstances that -- the narrow circumstances that would allow

15:16:46   7   MGP to withdraw its guilty plea.  And in essence, Mr. Lynn, it

15:16:54   8   describes that the only circumstance in which MGP would have a

15:17:01   9   right to withdraw its plea agreement is if the court were to

15:17:04   10  reject the plea agreement and the sentence it proposes.  Is

15:17:07   11  that consistent with your understanding --

15:17:09   12          MR. LYNN:  Yes.

15:17:10   13          THE COURT:  -- of your agreement?

15:17:11   14          MR. LYNN:  Yes, it is.

15:17:14   15          THE COURT:  Paragraph 11, I've read that carefully as

15:17:16   16  I'm confident you have.  I read it to say that MGP has agreed

15:17:20   17  to waive almost all of its rights of appeal and collateral

15:17:23   18  attack.  Is that the way you understand paragraph 11?

15:17:30   19          MR. LYNN:  Yes, it is.

15:17:31   20          THE COURT:  And do you have any unresolved questions

15:17:33   21  in your mind about how that paragraph will work?

15:17:36   22          MR. LYNN:  I do not.

15:17:37   23          THE COURT:  The last question I have about the

15:17:42   24  agreement is on page 13 in paragraph 15 and these words at the

15:17:48   25  very end of that page:  "This plea agreement embodies each and

19-4002101  USA v MGP Ingredients, Inc.  11.18.19                    23

15:17:52  1  every term of the agreement between the parties."

15:17:56  2       You see this kind of provision in your daily work, I

15:17:59  3  suspect, and think of it as a merger clause.  My understanding

15:18:02  4  of it here is that you, your company, and the prosecutor have

15:18:07  5  committed every agreement you have with one another on the

15:18:10  6  subject of your company's plea to this written agreement.  Is

15:18:14  7  that the way you understand those words as well.

15:18:17  8       MR. LYNN:  Yes, it is.

15:18:18  9       THE COURT:  All right.  Mr. Lynn, I will talk with you

15:18:23  10  now about -- well, let me -- let me switch up the order here.

15:18:29  11       I did not address the factual basis for the guilty

15:18:34  12  plea, and this, of course, is a requirement for any guilty plea

15:18:38  13  in federal court.  So tell me how the parties either have

15:18:43  14  agreed or proposed to persuade the court there is a factual

15:18:47  15  basis for MGP to plead guilty.

15:18:50  16       MR. HATHAWAY:  Yes, Your Honor.  In doing so, I want

15:18:51  17  to also integrate Document 22, which I believe is the

15:18:57  18  superseding indictment in this case which sets forth in a

15:19:00  19  little bit more detail about what the event was that

15:19:03  20  transpired.

15:19:04  21       In short, this case involves two corporations.  One is

15:19:10  22  MGPI Processing -- well, a subsidiary of -- Inc., which is a

15:19:17  23  facility in Atchison, Kansas, where they make food products, in

15:19:23  24  particular a kind of food grade alcohol.  It is supplied for

15:19:28  25  purposes of the processing activities by Harcros Chemicals.

15:19:37  1        The factual bases talks about a driver and an operator

15:19:42  2   as well as the superseding indictment.  The driver is a cargo

15:19:50  3   tank motor vehicle operator for Harcros.  Operator is an

15:19:54  4   employee of the defendant MGPI.  Both industries have standard

15:20:01  5   written operating procedures which were a step-by-step

15:20:04  6   instructions compiled by an organization to achieve efficiency,

15:20:13  7   economy, and safety.

15:20:15  8        MGPI had standard operating procedures containing

15:20:26  9   instructions regarding off-loading of hazardous chemicals in

15:20:34  10  the MGPI facility, including steps designed to prevent mixing

15:20:38  11  of incompatible hazardous chemicals, including sulfuric acid

15:20:43  12  and sodium hypochlorite.  The standard operating procedure of

15:20:49  13  MGPI required that the employee or the operator remain present

15:20:57  14  during the connection and personally open the valve to the

15:21:00  15  correct fill line.

15:21:02  16       Harcros also had standard operating procedures,

15:21:05  17  including step-by-step instructions to its drivers, to prevent

15:21:10  18  mixing of incompatible hazardous chemicals.  The Harcros SOP

15:21:20  19  required that the driver confirm that the material would be

15:21:22  20  loaded into the correct tank and that the driver would

15:21:24  21  continuously monitor the transfer until the correct amount of

15:21:28  22  material had been transferred.

15:21:29  23       The incident itself took place in the early morning

15:21:34  24  hours of October 21, 2016.  A driver for Harcros arrived at the

15:21:41  25  MGPI Atchison facility to complete a scheduled delivery of

15:21:47  1   30 percent sulfuric acid.  Upon arrival, the driver exited the

15:21:52  2   cab and began to pressurize the cargo tank for unloading.  The

15:21:58  3   driver took the bills of lading to the building where MGPI

15:22:03  4   night operator -- shift operator on duty reviewed and signed

15:22:06  5   the paperwork for accepting a delivery.

15:22:08  6       The operator escorted the driver from the Mod B

15:22:15  7   Building at the Atchison facility to the chemical unloading

15:22:19  8   area.  When they reached the rear of the vehicle, the driver

15:22:25  9   set his paperwork on the back and walked down the passenger

15:22:28 10   side to finish donning his personal protective equipment.

15:22:33 11   During this time the operator for MGPI unlocked the gate in

15:22:38 12   front of the transfer equipment and removed the lock on the cam

15:22:41 13   lever.

15:22:41 14       The operator placed the lock from the sulfuric acid

15:22:47 15   fill line on the angle iron above the fill line.  The driver

15:22:51 16   removed the seal from the back of the cargo tank, handed it to

15:22:55 17   the operator and then retrieved the hose from the truck to

15:22:57 18   begin the connection.  Contrary to MGPI's standard operating

15:23:05 19   procedure, the operator then left the area and returned to

15:23:07 20   Mod B Building.

15:23:11 21       The driver removed the dust cap from the first

15:23:16 22   unlocked fill line that he saw at the facility in which he

15:23:19 23   assumed to be the -- excuse me -- the sulfuric acid fill line

15:23:23 24   which was in fact a sodium hypochlorite fill line.  Contrary to

15:23:30 25   the Harcros SOP, the driver connected the hose to the sodium

15:23:35  1    hypochlorite fill line without verifying that it was the

15:23:38  2    correct line.  It then connected the other end of the hose to

15:23:42  3    the cargo tank of sulfuric acid.

15:23:45  4         Contrary to the MGPI standard operating procedure, the

15:23:51  5    operator did not remain in the area while the driver made the

15:23:54  6    connection.  The sodium hypochlorite fill line located near --

15:24:00  7    18 inches from sulfuric acid fill line was unlocked.  The

15:24:04  8    driver connected the car tank -- cargo tank of sulfuric acid to

15:24:08  9    the sodium hypochlorite line.  And between 8:00 a.m. that

15:24:13  10   day -- or beginning then, a greenish-yellow toxic chlorine gas

15:24:19  11   cloud began to form in the area.

15:24:21  12        Over 4,000 gallons of sulfuric acid were combined with

15:24:26  13   5,800 gallons of sodium hypochlorite for over 45 minutes

15:24:32  14   causing a toxic plume of chlorine gas and other chemicals to

15:24:37  15   cover Atchison for 45 minutes until emergency personnel arrived

15:24:42  16   to turn off the flow.  There were injuries.  There was

15:24:48  17   hospitalizations as set forth in the superseding indictment.

15:24:57  18        And that is in essence what's been diluted down to a

15:25:02  19   little bit more succinct statement in the statement of facts in

15:25:06  20   the plea agreement.

15:25:07  21        THE COURT:  And I take it that your statement to the

15:25:12  22   court is that the government possesses evidence of the things

15:25:19  23   you have just narrated into the record and would offer to prove

15:25:26  24   those things you have stated at a trial in this case?

15:25:29  25        MR. HATHAWAY:  We would, Your Honor.

| 15:25:30 | 1 | THE COURT:  So as for the factual basis that we have |

THE COURT:  So as for the factual basis that we have heard, Mr. Thornhill, is there any dispute that the government has evidence of the kind Mr. Hathaway has just described, understanding you may dispute some of it, but the key question is do you doubt he has evidence of the kind he has described?

MR. THORNHILL:  Within the statements made by Mr. Hathaway as he summarized the superseding indictment, there are statements from which the United States has facts which would be sufficient for the United States to make a submissible case.

THE COURT:  All right.  I am satisfied there is a factual basis for the court to accept a guilty plea if that is what happens during today's hearing.

Mr. Lynn, I want to turn to just a couple of consequences of pleading guilty.  They are -- for someone of your education, training, and experience, I'm confident that you don't need to be told these things, but careful is better than not careful, and so I'll ask them anyway.

So as things stand right now, MGP Ingredients is entitled, after a full jury trial, to have a jury decide whether the government has proved that MGP is guilty beyond a reasonable doubt of the charge that's stated in Count 3 of the superseding indictment.

MGP would be entitled at a trial in this case and of that charge to a presumption of innocence, and that presumption

15:27:11  1    of innocence is a real thing.  It by itself is sufficient for

15:27:17  2    your company to win the trial even if it chose not to put on

15:27:22  3    any evidence.  Even if it didn't persuade the jury of a single

15:27:26  4    thing, that presumption of innocence by itself could support a

15:27:32  5    finding of not guilty.

15:27:33  6            In addition, MGP at this trial would have the right to

15:27:40  7    call witnesses and to cross-examine all of the government's

15:27:44  8    witnesses and challenge its evidence and its legal positions.

15:27:50  9    And before the prosecutor could convict your company of any

15:27:57  10   criminal charge, he would have to persuade all 12 members of

15:28:03  11   the jury unanimously that he's proved you -- your company is

15:28:06  12   guilty beyond a reasonable doubt.

15:28:07  13           Can you confirm that MGP understands that those

15:28:12  14   processes would apply to it and to this trial in this case?

15:28:17  15           MR. LYNN:  I can confirm that.

15:28:18  16           THE COURT:  The thing is, if you plead guilty on

15:28:21  17   behalf of MGP Ingredients today, to say the obvious, there's

15:28:25  18   not going to be a trial for those processes to apply.  And so I

15:28:31  19   want to make sure that your company understands today that if

15:28:37  20   you enter a guilty plea on MGP Ingredients' behalf, there will

15:28:43  21   never be a trial; it will never have its day in court on those

15:28:47  22   charges.  Can you confirm that your company understands that?

15:28:51  23           MR. LYNN:  I can confirm that.

15:28:52  24           THE COURT:  And has made the purposeful decision to go

15:28:56  25   ahead and plead guilty?

15:28:57  1        MR. LYNN:  That's correct.

15:28:59  2        THE COURT:  I think I talked with you -- about this

15:29:04  3  with you earlier, but just to be careful, paragraph 3 of your

15:29:14  4  plea agreement, it describes the sentence that you and the

15:29:22  5  government jointly are recommending as the sentence, the

15:29:27  6  punishment to be faced by MGP Ingredients.  Is that the way you

15:29:32  7  understand paragraph 3?

15:29:34  8        MR. LYNN:  Yes.

15:29:34  9        THE COURT:  And so you are confident that your CEO and

15:29:43 10  your board of directors understands that if you enter a guilty

15:29:47 11  plea today and the company receives the sentence it is asking

15:29:50 12  for in the plea agreement, that it will owe a fine of

15:29:54 13  $1 million?

15:29:55 14        MR. LYNN:  Yes.

15:29:55 15        THE COURT:  All right.  I want to take a moment just

15:30:05 16  to look at the petition, the form petition the court ordinarily

15:30:08 17  uses and perhaps ask a few questions from it.

15:32:34 18        Mr. Lynn, can you confirm -- Mr. Thornhill,

15:32:38 19  Mr. Brought, their law firm have represented MGP since the time

15:32:41 20  that it was named in the superseding indictment.  Is it correct

15:32:46 21  that you have shared with your counsel all the facts and

15:32:50 22  circumstances known to you about the charges made against MGP

15:32:55 23  in this superseding indictment?

15:32:56 24        MR. LYNN:  I have.

15:32:57 25        THE COURT:  And do you believe that your lawyers are

15:32:59   1   fully informed on all of those matters?

15:33:02   2              MR. LYNN:  I do.

15:33:03   3              THE COURT:  As -- can you confirm your attorney has

15:33:10   4   counseled you and advised you of all possible defenses your

15:33:15   5   company may have in this case and may assert?

15:33:18   6              MR. LYNN:  Yes, they have.

15:33:19   7              THE COURT:  So Mr. Thornhill described at the

15:33:26   8   beginning of this hearing about the agreement under 11(c)(1)(C)

15:33:33   9   and how the court retains the, I guess, discretion and

15:33:39  10   authority to reject that plea agreement.  I want to make sure

15:33:42  11   you understand what would happen if that were to occur.

15:33:45  12              If that were to happen, if for some reason the court

15:33:50  13   were to reject the parties' plea agreement, the guilty plea

15:33:55  14   that you are planning to make today would be withdrawn and all

15:33:58  15   statements you've made on behalf of that agreement would be

15:34:02  16   withdrawn and your -- the case against MGP Ingredients in

15:34:07  17   effect would return to where things stand today.  Is that

15:34:11  18   consistent with the way you understood it to work?

15:34:14  19              MR. LYNN:  Yes, it is.

15:34:16  20              THE COURT:  I also want to make sure you understand

15:34:21  21   and MGP understands that the court can't allow anyone to plead

15:34:28  22   guilty who maintains it is innocent, and I want to make sure

15:34:33  23   that I will not hear that from MGP Ingredients.

15:34:38  24              MR. LYNN:  You won't hear that from MGP.

15:34:42  25              THE COURT:  Counsel, let me do a round of final

| | | |
|---|---|---|
| 15:34:48 | 1 | checking with you.  Mr. Hathaway, does the United States know |
| 15:34:51 | 2 | of any reason why the court should not accept a guilty plea |
| 15:34:54 | 3 | from MGP Ingredients? |
| 15:34:56 | 4 | MR. HATHAWAY:  We do not, Your Honor. |
| 15:34:57 | 5 | THE COURT:  Mr. Thornhill, do you know of any reason |
| 15:35:01 | 6 | why MGP Ingredients should not plead guilty to the charge in |
| 15:35:04 | 7 | Count 3 of the superseding indictment? |
| 15:35:07 | 8 | MR. THORNHILL:  I do not, Your Honor. |
| 15:35:07 | 9 | THE COURT:  Mr. Thornhill, does MGP Ingredients want |
| 15:35:11 | 10 | to waive the full reading of the indictment or does it wish to |
| 15:35:15 | 11 | have that superseding indictment read aloud? |
| 15:35:19 | 12 | MR. THORNHILL:  It wishes to waive that right, Your |
| 15:35:20 | 13 | Honor. |
| 15:35:20 | 14 | THE COURT:  Is that correct, Mr. Lynn? |
| 15:35:22 | 15 | MR. LYNN:  That's correct. |
| 15:35:23 | 16 | THE COURT:  All right.  Counsel, I am almost out of |
| 15:35:26 | 17 | questions.  Before I ask for the plea to Count 3 of the |
| 15:35:33 | 18 | superseding indictment, are there any concerns or questions |
| 15:35:36 | 19 | that either party or Mr. Lynn wishes to raise? |
| 15:35:39 | 20 | MR. HATHAWAY:  Not the United States, Your Honor. |
| 15:35:41 | 21 | MR. THORNHILL:  Not from counsel from the defendant, |
| 15:35:43 | 22 | Your Honor. |
| 15:35:43 | 23 | THE COURT:  And, Mr. Lynn, if you have any questions, |
| 15:35:46 | 24 | whether they be for me or for your lawyer, if you do we'll stop |
| 15:35:49 | 25 | and take care of them.  You can -- you certainly have the right |

15:35:51   1    to talk to him privately at any time.

15:35:53   2            MR. LYNN:  I don't have any questions.

15:35:54   3            THE COURT:  All right.  Then I will formally ask you

15:35:59   4    how does the defendant, MGP Ingredients, Incorporated, plead to

15:36:04   5    the charge against it in Count 3 of the superseding indictment,

15:36:08   6    guilty or not guilty?

15:36:09   7            MR. LYNN:  Guilty.

15:36:10   8            THE COURT:  The court finds that the defendant, MGP

15:36:15   9    Ingredients, as shown by the statements of its mentally

15:36:20   10   competent and duly authorized representative at this hearing

15:36:26   11   has made an informed, intelligent, knowing and voluntary

15:36:30   12   decision to plead guilty to the charge in Count 3.  The court

15:36:36   13   also finds that Mr. Lynn has actual authority to enter a plea

15:36:42   14   of guilty on behalf of the corporation.

15:36:46   15           In addition, the court is convinced and finds that the

15:36:50   16   guilty plea to Count 3 is supported by an independent basis in

15:36:56   17   fact that contains each essential element of the offense

15:36:58   18   charged in Count 3 of the indictment.  Therefore, I do accept

15:37:04   19   the defendant's guilty plea and it is now adjudged guilty on

15:37:07   20   Count 3 of the superseding indictment.

15:37:11   21           Counsel, I'm going to set a sentencing hearing for

15:37:14   22   February 24th at 1:30 in the afternoon.  I am going to do two

15:37:20   23   things:  Number one, I'm going to defer the decision whether to

15:37:23   24   accept the parties' plea agreement until the time of

15:37:28   25   sentencing.  I also am deferring, at least for today, the

15:37:31   1   decision whether to forego a presentence investigation and

15:37:38   2   report.  If it is my conclusion that such an investigation and

15:37:45   3   report would not assist the court's sentencing efforts and

15:37:52   4   would also require a degree of effort, not only by the parties

15:38:02   5   but by the probation office, that is unjustified here, then

15:38:07   6   I'll inform you that I've reached that conclusion and ask you

15:38:11   7   to consult with one another and contact Ms. Garrett to change

15:38:16   8   the date of that sentencing hearing.  I -- if that's the

15:38:19   9   outcome of this, I can do it in short order.  If it's not,

15:38:23   10  February may be an optimistic date.

15:38:25   11       All right.  That is all the items that I have on my

15:38:29   12  list of things to talk about with you.

15:38:31   13       Mr. Lynn, thank you for your patience with my many

15:38:34   14  questions.  I assure you this is a somewhat abbreviated list

15:38:38   15  from many other hearings.

15:38:39   16       Anything else to take up before we close the record

15:38:42   17  for today?

15:38:43   18       MR. HATHAWAY:  Not on behalf of the government, Your

15:38:44   19  Honor.

15:38:44   20       MR. THORNHILL:  Your Honor, I'll ask Mr. Hathaway's

15:38:48   21  office to deliver to chambers the fully executed plea agreement

15:38:51   22  so that you're certain to have the document to which the

15:38:55   23  parties finally agreed.

15:38:57   24       THE COURT:  Yeah, I probably should have made a record

15:38:59   25  on that today.  I take it it is not yet fully signed?

15:39:02  1          MR. THORNHILL:  No, Your Honor, it is and I have the

15:39:04  2   fully signed document in my hand.

15:39:06  3          THE COURT:  I'm glad you spoke up.  I misunderstood

15:39:08  4   something you said earlier.  Are you in a position to present

15:39:11  5   that and let me inspect that before we close the record?

15:39:13  6          MR. THORNHILL:  I certainly am, Your Honor.

15:39:16  7          THE COURT:  Let me take a look at that.

15:39:41  8          Mr. Lynn, your attorney has handed up a document

15:39:44  9   that's entitled Plea Agreement pursuant to the Federal Rule of

15:39:49  10  Criminal Procedure 11(c)(1)(C).  On page 14 of that agreement

15:39:52  11  there is a signature above that signature line that's

15:39:54  12  identified as authorized representative MGP Ingredients, Inc.

15:39:58  13  Is that your signature there?

15:39:59  14          MR. LYNN:  It is.

15:40:04  15          THE COURT:  And can I be sure that you signed that

15:40:06  16  agreement because your employer wanted to and had authorized

15:40:12  17  you to sign that plea agreement on its behalf?

15:40:16  18          MR. LYNN:  That's correct.

15:40:16  19          THE COURT:  All right.  I'll deliver the original of

15:40:18  20  that plea agreement to the deputy clerk to record.  Thank you

15:40:23  21  very much for redirecting me on that.

15:40:26  22          With that, I think we're concluded, so go ahead.  I'll

15:40:29  23  be in touch with you on where -- where we're going on the

15:40:34  24  presentence --

15:40:34  25          Let me just check signals with Ms. Garrett because

15:40:37  1   this has not been precisely how we often leave things at the

15:40:41  2   end of a plea hearing.

          3       (Off-the-record with deputy clerk.)

15:40:46  4       THE COURT:  All right.  I think we are good.  Thank

15:40:47  5   you very much for your appearances.  Go ahead and close the

15:40:49  6   record and be adjourned.  Thank you.

15:40:50  7       (Proceedings adjourned.)

          8

          9                     CERTIFICATE

         10       I certify that the foregoing is a true and correct

         11   transcript from the stenographically reported proceedings in

         12   the above-entitled matter.

         13       DATE:  November 25, 2019

         14

         15            /s/Kimberly R. Greiner
                       KIMBERLY R. GREINER, RMR, CRR, CRC, RDR
         16            United States Court Reporter

         17

         18

         19

         20

         21

         22

         23

         24

         25